COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Retired Judge Kulp[*]
Argued at Richmond, Virginia


EDWARD LEE CAPLE, JR.

MEMORANDUM OPINION[**] BY
v.    Record No. 0139-99-2          JUDGE ROBERT J. HUMPHREYS
                                         AUGUST 22, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
W. Park Lemmond, Jr., Judge Designate

J. Overton Harris for appellant.

Leah A. Darron, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Edward Lee Caple, Jr. appeals his conviction by a jury of transporting cocaine, possession of cocaine with the intent to distribute and possession of cocaine. He argues that the trial court erred 1) by responding to a question from the jury with what he suggests was an incorrect statement of the law, and 2) in failing to grant his motion for a mistrial.  For the reasons that follow, we affirm his convictions.


---

[*] Retired Judge James E. Kulp took part in the consideration of this case by designation pursuant to Code § 17.1-400, recodifying Code § 17-116.01.

[**] Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

## I.  BACKGROUND

On July 11, 1998, Caple was driving a 1993 Mazda minivan on Interstate 95 in Hanover County when he was stopped by Trooper Richard T. Ardis for equipment violations.  In addition to Caple, there were three other occupants in the van.  When Caple rolled down the driver's side window, Trooper Ardis smelled an odor of burning marijuana.  Ardis then obtained Caple's driver's license and asked him to step to the rear of the vehicle.

After reviewing the license and talking with Caple, Trooper Ardis determined that Caple was not the owner of the vehicle.  Accordingly, he advised Caple that if the owner is not the driver, but is a passenger in the vehicle, the driver is not given a summons for equipment violations, which are the responsibility of the owner.  Caple then identified the owner, Rodney McDuffie, as a passenger in the van.  Trooper Ardis spoke to McDuffie, who gave him consent to search the van.

The search revealed two bags of marijuana and a crack cocaine pipe in the vicinity of the third seat, as well as a bag containing crack cocaine underneath the driver's seat.  Caple admitted that the crack cocaine pipe was his.  After Trooper Ardis advised him that he was under arrest for possession of drugs, Caple stated that he needed money and was being paid to drive the vehicle.  He then elaborated that McDuffie was "the main man" and that originally, he was to be paid to drive a rental vehicle loaded with cocaine back from New York.  McDuffie

-

and his companions were to have followed in the minivan on the drive back, but Caple explained that authorities in New York had seized the rental vehicle and $6,000.

At trial, the defendant testified and denied making these statements. He also claimed that he had no knowledge of cocaine in the van and that he had been coerced by Trooper Ardis and his companions into admitting ownership of the crack pipe.

The trial court instructed the jury on actual and constructive possession, and explained that possession could be proved by circumstantial evidence. The court did not instruct the jury on the concepts of principles, accessories and concert of action. However, during his closing argument, the prosecutor referred to the legal concepts of principles and accessories, as well as concert of action.

After deliberating for one hour and forty-five minutes, the jury returned with a question. The jury asked, "[i]f there was intent by more than one in the van, does that mean that all are guilty of intent?" After taking the question, several sidebar conferences were held which were not made a part of the record. The record does reveal that the prosecutor asked the court to "re-read" the two jury instructions he had submitted on concert of action and the definition of principles and accessories. The trial court recalled no such instructions being offered by the Commonwealth, and the prosecutor could not locate his copies.

-

Rather than wait to secure written instructions, the court asked as follows:

> Do you want to go ahead and instruct the jury as to what I consider? Well do you want me to tell you what I consider and then you can argue? I'll tell you what I consider to be the answer to the question.

The record does not reveal any objection to this proposal. After another unrecorded sidebar conference, the court instructed the jury as follows:

> Members of the jury, the answer to your question, that if there was intent by one or more in the van does that mean that all are guilty of intent, the answer would be yes if they are all acting together. If it was a plan and they were acting together to carry out this plan, then they were all guilty of intent. Now as to the knowledge of the intent by someone else to distribute, I'm not sure I understand what you mean by that last question. Could you elaborate?

A juror responded as follows:

> If a person acts with others knowing that the others will be distributing a substance, even though that person wouldn't physically be distributing a substance, the knowledge of someone else distributing that, does that make that person guilty, also?

The trial court then responded:

> Yes, if he knows and he's acting with them. Even though he does not himself do it, he's guilty along with the rest of them. If he knows and is along, goes along with that, he doesn't have to be the actual perpetrator.

Following this colloquy, another sidebar conference was held at which counsel for Caple indicated that he had a

-

"problem" with the way the instructions were given because they "may indicate that the person need only have either knowledge or intent."

Following this sidebar, the court addressed the jury further as follows:

> If there was a common plan, members of the jury, and this defendant went along with it, he's guilty along with the rest.  Now, if you believe, as he said, he didn't have knowledge of all of that, then he's not guilty, if you believe him.  So you can go back to your jury room, decide what your verdict will be.

After the jury retired to deliberate further, counsel for Caple moved for a mistrial.  His stated reason for the motion was, "I'm afraid that the exchange may have been confusing to them and it may have been prejudicial to my client."  After the court asked him to state his grounds more precisely, he responded that the law is "that each individual has to have his own intent" and he further indicated that a correct statement of the law would be that "you can have shared intent and shared knowledge", and that the jury must find that Caple had "knowledge or constructive knowledge and shared intent, which can be inferred from the circumstances."  The trial court denied the motion for a mistrial.

## II.  ANALYSIS

The Commonwealth contends that Rule 5A:18 bars our consideration of the question presented because no

-

contemporaneous objection stating the grounds for the objection was made at the time of the ruling.  We agree.

"Where an accused alleges that the trial court has made improper remarks in the presence of the jury but fails contemporaneously to object, request a cautionary instruction or move for a mistrial, he waives the right to challenge those remarks on appeal.  A motion for a mistrial is untimely and properly refused when it is made after the jury has retired." Humbert v. Commonwealth, 29 Va. App. 783, 791, 514 S.E.2d 804, 808 (1999) (citations omitted).

In this case, Caple made no objection to the procedure proposed by the trial court.  He offered no alternative instruction.  Although at one point he indicated that he had a "problem" with the way the instructions were given because they "may indicate that the person need only have either knowledge or intent", he did not object to the clarification the trial court gave the jury in response to his "objection".  Finally, Caple made no motion for a mistrial until the jury retired to deliberate.

Because this issue was not properly preserved and because we see no need to invoke the "ends of justice" exception to Rule 5A:18, we affirm the judgment of the trial court.

Affirmed.

-